**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **CHARLES FARRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No: 11 C 5505** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **CAROLYN W. COLVIN,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff, Charles Farrell, seeks review of the final decision of the
Commissioner ("Commissioner") of the Social Security Administration ("Agency")
denying his application for Disability Insurance Benefits ("DIB") under Title II of the
Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income
("SSI") under Title XVI of the Act.  42 U.S.C. § 1382c(a)(3)(A).   Mr. Farrell asks the
court to reverse and remand the Commissioner's decision, while the Commissioner seeks
an order affirming the decision.

## I.

## PROCEDURAL HISTORY

Mr. Farrell applied for DIB and SSI on March 14, 2008, alleging that he became
disabled on April 26, 2007, due to a combination of impairments, including back pain,
diabetes, drug addiction, hypertension, and depression. (Administrative Record ("R."),

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for
Michael J. Astrue as the appellee.

167-74, 212). His application was denied initially and upon reconsideration. (R. 94-98, 128-30). Mr. Farrell requested a hearing and, on September 4, 2009, appeared and testified, represented by counsel, before an ALJ. (R. 38-93). In addition, Pamela Tucker testified as a vocational expert. (R. 38). On December 18, 2009, the ALJ issued a decision finding that Mr. Farrell was not disabled because he could perform a limited range of light work that allowed him to do a significant number of jobs in the regional economy. (R. 18-31). This became the final decision of the Commissioner when the Appeals Council denied Mr. Farrell's request for review of the decision on June 14, 2011. (R. 1-6). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Farrell has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).[2]

## II.

### EVIDENCE OF RECORD

#### A.

#### The Vocational Evidence

Mr. Farrell was born on October 29, 1970, making him 39 years old at the time of the ALJ's decision. (R. 222). He has an eighth-grade education. (R. 220). His work history has been that of a laborer for various employers. (R. 213). This involved lifting 100 pounds and carrying 50. (R. 213).

---

[2] Mr. Farrell had the opportunity to file a reply brief in this case [Dkt. # 9], but never has. Accordingly, he has waived the right to file a reply and respond to the Commissioner's arguments. Local Rule 78.3.

**B.**

**The Medical Evidence**

Mr. Farrell underwent an MRI on November 13, 2006, after complaining of low back pain. (R. 343). Imaging revealed central and right L4-L5 disc herniation, left-sided disc protrusion (herniation), multilevel Smorl's nodes, and mild disc bulging in the upper lumbar region. (R. 343-44).  Two days later, he injured himself at work, and went to the Provena ER on December 9, 2006, with complaints of severe pain.  (R. 356). Examination revealed moderate paravertebral tenderness with spasms, and Mr. Farrell was diagnosed with lumbar spine strain, treated with Toradol pain injections, and prescribed Skelaxin – a muscle relaxant –  and Motrin – an NSAID.  (R. 356).  Mr. Farrell had another mishap two days later – a slip and fall – and sought treatment at the Ottawa Community Hospital ER.  (R. 323).  He was diagnosed with acute low back strain and prescribed Vicodin – a narcotic pain reliever – and Valium – for anxiety.  (R. 323).

Between December 24, 2006, and December 3, 2007, Drs. Gupta and Singla regularly examined and treated Mr. Farrell for chronic lower back pain with left leg weakening, numbness, and tingling radiating down his leg while standing, monitoring of his blood pressure and diabetes, and medication management. (R. 365-77, 392).

On March 3, 2007, Mr. Farrell had another fall, and returned to the ER, complaining of groin and leg pain. (R. 315).  He was diagnosed with a left thigh strain and told not to engage in sudden leg movements.  He was again prescribed Vicodin,

Valium, and Ibuprofen for pain and muscle spasms. (R. 313). Mr. Farrell sought treatment for back pain again on August 5, 2007, after attempting to do construction. (R. 310). He reported numbness, tingling, and pain in his left side, spine, and coccyx which radiated into both his hips and legs; it was a constant ache at a level of 8/10. (R. 310). On October 3, 2007, Mr. Farrell was treated for groin pain again and was given Vicodin. (R. 354).

On April 11, 2008, Mr. Farrell went to see by Dr. Singla and reported that his pain was a 6/10, that he had numbness in his back and legs, and that his left leg kept "going out" on him. (R. 364). In a follow-up visit on June 17, 2008, Mr. Farrell said his leg and lower back problems persisted. (R. 451). That day, Dr. Singla filled out a physical residual functional capacity ("RFC") questionnaire from Mr. Farrell's attorney. (R. 406). He listed Plaintiff's diagnoses as chronic pain, diabetes, hypertension, and neuropathy. Prognosis was good. Symptoms were low back pain radiating to the legs. There were no overlaying problems like depression, anxiety, or somatoform disorder. (R. 406). Dr. Singla said that Mr. Farrell could walk 1-2 city blocks without rest or severe pain, could sit or stand for about 30 minutes at one time, and was capable of sitting or standing/walking for less than two hours in an eight-hour work day, leaving over four hours of the day unaccounted for. Every 30 minutes, Mr. Farrell would have to rest for fifteen minutes. (R. 407). The most Mr. Farrell could ever lift was less than ten pounds. He had no limitation in reaching, figuring, or grasping, and he had no psychological or

environmental restrictions. On average, he would miss four days of work a month. Alcohol and/or drug abuse were not involved. (R. 408).

On July 29, 2008, Mr. Farrell had a psychological consultative examination arranged by the disability agency. William Hilger, Ph.D., noted that Mr. Farrell reported the symptoms he shared with his treating physician, Dr. Singla, but added high cholesterol, depression, anxiety, social phobia, and a past alcohol and opiate addiction. He also reported that he had been staying in his home for the last four years, isolating himself from people and suffering panic attacks. (R. 417). Dr. Hilger observed that Mr. Farrell walked very slowly with the use of a cane. (R. 410-11). Dr. Hilger also noted that he answered all questions extremely slowly and appeared to be very lethargic, tired, and depressed. Mr. Farrell said he was taking Paxil and hearing voices, having trouble sleeping, had lost weight, and had attempted suicide in the past. (R. 411-12). Mr. Farrell said that he had been drinking at least 30 beers per night on the weekends the last seven years. He had used cocaine six times in the previous year, most recently five weeks before the consultative exam. (R. 411). Upon testing, remote memory was minimal, and recent memory was poor. General knowledge was minimal –he thought there were 42 weeks in a year.

He named Texas, Florida, and Mississippi as cities. He said John Adams was the president during the Civil War. (R. 412). Ability to calculate was minimal, and conceptual and abstract reasoning were fair. Judgment was fair as well. (R. 413). Diagnosis was alcohol dependence and drug abuse, dysthmic disorder, agoraphobia with

panic attacks, and estimated borderline mental functioning. Global Assessment of Function score was 55-60. Dr. Hilger felt Mr. Farrell showed poor mental potential for work involving understanding, memory, concentration, social interaction, and adaptation. (R. 413). He thought that he might need to be retrained into more sedentary, less physically stressful, types of work. (R. 414).

On August 9, 2008, Mr. Farrell had a physical consultative examination arranged by the disability agency. Dr. Chukwu Emika Ezike noted that Mr. Farrell reported his chief complaints were back pain and neuropathy. The back pain was constant and 8/10 in severity. Mr. Farrell said he had fallen and occasionally walks with a cane. (R. 421). Mr. Farrell told the doctor he could walk less than a block, stand for no more than 3-4 at a time, and sit for no more than 5 minutes at a time. He could lift no more than 10 pounds, and could drive only short distances. He also had trouble climbing stairs. (R. 422). Mr. Farrell said he did not abuse alcohol or drugs. His medications were listed as Metformin (diabetes), Vytorin (cholesterol), Glipizide (diabetes), Lotrel (hypertension), Paxil (depression/anxiety), Lyrica (nerve pain), Prilosec (acid reflux), Suboxone (opiate addiction), Motrin (pain), and naproxen (NSAID). (R. 422). Upon examination, Mr. Farrell was able to walk 50 feet without assistance, but with a slow and antalgic gait. He could heel/toe walk with mild difficulty. Grip strength and manipulation were normal. Range of motion in the upper and lower extremities and cervical spine was normal. Lumbar range of motion was limited to 30 degrees flexion and 10 degrees extension, but there was no paraspinal tenderness and straight leg raising was negative. Sensation was

decreased in the medial aspect of both legs. (R. 422). Mr. Farrell was oriented and had a normal affect; there was no sign of depression or anxiety. (R. 422). Dr. Ezike felt that, at 5'9" and 261 pounds, Mr. Farrell's main problem was obesity, along with lumbar disc disease, hypertension, and diabetes with neuropathy. (R. 424).

Psychologist Ronald Havens, Ph.D., reviewed the file on behalf of the agency on August 28, 2008. (R. 440-43). He found Mr. Farrell moderately limited in his ability to travel in unfamiliar places, and to understand, remember and carry out detailed instructions. (R. 440-41). He noted that Mr. Farrell had no record of psychological treatment and had never mentioned depression or any emotional problems to his treating doctors or to Dr. Ezike. Then, suddenly, at the consultative exam with Dr. Hilger, he complained of depression, agoraphobia, and panic attacks. (R. 442). As such, Dr. Havens felt Mr. Farrell's allegations of psychological impairment were not credible. (R. 442). On October 23, 2008, Dr. Havens's mental RFC assessment was affirmed by Kirk Boyenga, Ph.D. (R. 460-61).

Based on Dr. Ezike's report, a State agency physician, Towfig Arjmand, felt Mr. Farrell was capable of lifting 20 and carrying 10, standing/waking for 2 hours of an 8-hour workday and sitting for 6. (R. 453). He could only occasionally climb stairs, balance, or stoop, and could never climb ladders, ropes, or scaffolds. (R. 454). Two months later, Dr. Francis Vincent affirmed this assessment. (R. 460-61).

In late 2008, Mr. Farrell sought substance abuse treatment from Grundy County Health Department. (R.464-86). He showed up for fewer than half of his weekly

appointments, cancelling 14 and attending just 8.  (R.  (R. 467-85).  During this period, he had three drug screens; all of which were negative. (R. 504-05; 508).

## C.

### The Administrative Hearing Testimony

### 1.

### The Plaintiff's Testimony

At his hearing, Mr. Farrell testified that he was separated and lived with his 4 children, aged 9 to 16.  (R. 45-46).  He explained that he stopped working because he had overwhelming thoughts of depression, anxiety and back problems.  (R. 54).  He thought it was associated with his back problems – it worked on him mentally.  (R. 54).  Mr. Farrell admitted that he abused alcohol and narcotics during the time he was working.  (R. 55). He since has gotten help, detoxed, and attended a couple of AA meetings.  (R. 57).

Mr. Farrell discussed his medications.  He said the Suboxone left him groggy and his hypertension medication, along with his antidepressants made him dizzy.  He felt sick for a while after taking his diabetes medication.  (R. 59).  He said that he awoke at 5:30 or 6:00 a.m., then basically spent most of his day trying to keep comfortable.  He elevated his legs most of the day in the recliner.  (R. 60, 61-62).  His children got themselves something for breakfast and made dinner.  (R. 60-61).  Mr. Farrell ate something pre-prepared for lunch so he didn't have to stand and cook.  (R. 60).   His children or a neighbor did all the chores.  (R. 61).  If he had to grocery shop, he would use a motorized cart.  (R. 62).  When he walked, he always used a cane.  (R. 62).

Sometimes when his legs became numb, he'd fall. (R. 66). This made him avoid leaving the house. (R. 69). He used to hunt, fish, hike, and camp, but he could no longer do any of those things. Now, he mostly watched TV. (R. 62).

Mr. Farrell said he could stand for 5 to 10 minutes, and sit for about 10 to 20 minutes before he had to "rearrange himself." (R. 63). The heaviest weight he could lift was 10 pounds, and he couldn't pick up anything from the floor. (R. 63). Mr. Farrell said that during the hearing, because he was not reclining, his pain was a 10/10. (R. 64). At home, it was generally a 7 or 8 out of 10. (R. 64). Medication provided him enough relief to cope. (R. 65). The pain affected his ability to focus – it was disruptive. (R. 66). He didn't shower every day because it was a "hectic workout." (R. 70). He didn't sleep well and had trouble remembering things. (R. 70).

**2.**

**The Vocational Expert's Testimony**

Pamela Tucker then testified as a vocational expert ("VE"). The ALJ asked her to assume an individual with Mr. Farrell's background but not transferable work skills was able to perform light work except for being on his feet more than 2 hours in an 8-hour workday, who could only occasionally bend and could not work at heights or frequently negotiate stairs, twist, turn, or frequently operate foot controls, and who could not be exposed to hazardous machinery and was not suited for work requiring ongoing focus and intense concentration. (R. 81). The VE said that such a person could not perform any of Mr. Farrell's past work, but could perform other work that allowed standing or sitting

at will. (R. 82). Examples were: food preparer (1,000 positions), ticket seller (1,700 positions), information clerk (2,000 positions). (R. 82-83). The use of a cane to walk would have no effect on these positions. (R. 85). If the same person could lift no more than 10 pounds, or sit for no more than 20 minutes at a time, or walk no more than a block, the VE testified that the decreased lifting would rule out those jobs. (R. 86). Still, such a person could do work like food and beverage order clerk (650 positions), telephone solicitor (3,500 positions), and addressing clerk (700 positions). (R. 88). Finally, the ALJ presented a third hypothetical wherein the individual would need to rest after 30 minutes, and would be absent 2 to 3 times a week; the VE indicated all jobs would be precluded. (R. 88-89, 92)

Mr. Farrell's attorney then added some other restrictions. In response, the VE then testified that an individual who was off-task even 10% of the time, required additional unscheduled breaks, or required additional instruction and supervision due to difficulty retaining information would not be able to perform any of the identified jobs. (R. 92-93).

### D.

### The ALJ's Decision

The ALJ found that Mr. Farrell suffered from the following severe impairments: "discogenic disorder of the back, obesity, diabetes with neuropathy, affective disorder, alcohol and narcotic substance abuse." (R. 20). The ALJ went on to determine that Mr. Farrell "did not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 CFR Subpt. P, Appendix 1 (20 CFR 404.1520(d), 404. 1525 and 404.1526)." (R. 19). More specifically, he did not meet the listing for his spinal impairment (Listing 1.04), his diabetes (Listing 9.08), his affective disorder (Listing 12.04), or his substance addiction (Listing 12.09). (R. 21-22).

Next, the ALJ determined that Mr. Farrell "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is unable to be on his feet standing or walking for more than 2 hours in an 8-hour workday. He can only occasionally bend, should not work at heights or frequently negotiate stairs. He cannot do frequent twisting, turning, or frequent operating of foot controls. He is not suited for work that requires ongoing, focused and intense concentration. He should not be exposed to moving or dangerous machinery." (R. 22-23). The ALJ considered Mr. Farrell's allegation and then found that, while Mr. Farrell's impairments could reasonably be expected to produce his alleged symptoms, his allegations regarding "the intensity, persistence and limiting effects of th[o]se symptoms are not credible to the extent they are inconsistent with" the residual functional capacity assessment. (R. 27). He gave only some weight to the opinion of Dr. Singla and the agency physicians in view of the medical evidence. (R. 28).

The ALJ then turned to the vocational evidence, noting that Mr. Farrell was a younger individual with a limited education. (R. 29). He then relied on the testimony of the VE that someone with Mr. Farrell's background and residual functional capacity could perform jobs like food preparer, ticket seller, or information clerk. (R. 30). As

these jobs existed in significant numbers in the regional economy, the ALJ concluded that Mr. Farrell was not disabled.  (R. 31)

## IV.

## DISCUSSION

## A.

## The Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one.  The court must affirm the decision if it is supported by substantial evidence.  42 U.S.C. §§ 405(g).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"  *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010)(*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The court may not reweigh the evidence, or substitute its judgment for that of the ALJ.  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009);  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts.  *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings.  *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). It has also called it a lax standard. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008).

**B.**

**The Five-Step Sequential Analysis**

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

> 1) is the plaintiff currently unemployed;
>
> 2) does the plaintiff have a severe impairment;
>
> 3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;
>
> 4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

## C.

### Analysis

Mr. Farrell contends that the ALJ improperly found Mr. Farrell capable of light work, that he made an erroneous credibility determination, gave improper weight of the medical opinions, and failed to provide the VE with a complete hypothetical.

### 1.

Mr. Farrell's first argument is that the ALJ improperly found him capable of light work because light work is defined as requiring a good deal of walking or standing, and the ALJ found him unable to walk or stand more than two hours a day. First, the ALJ did not find Mr. Farrell capable of a full range of light work; he found him able to perform

only a limited range of light work. (R. 22-23). He explained that his ability to "perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." (R. 30). As a result, the ALJ could not rely on the medical vocational guidelines for a finding, but had to consult a VE, which he did. *See Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir. 2005)("The regulations and relevant case law amply provide for situations in which claimants fall between exertional levels, as [claimant] does here. In such cases, the ALJ must give consideration to the grids or use them as a framework. . . . In addition, consultation with a vocational expert may be helpful or even required."); *see also Books v. Chater*, 91 F.3d 972, 980-81 (7th Cir. 1996)(one cannot assume there are not significant light jobs with a sit/stand option; in such instances the ALJ must obtain the testimony of a VE).

The VE explained this at the hearing when counsel expressed the same concerns he does now:

> Q. Could you please explain how an individual who could only stand or walk for two out of eight hours would be able to perform light level employment when light is defined as the ability to stand or walk six out of eight hours?
>
> A. It's actually that the person may have to walk, but it could also be described as light because of the fact that they might have to do lifting that's greater than 10 pounds. And if that's the case, its classified as a light job but not necessarily that it requires six hours [of standing/walking]. It would be classified as light because of the lifting.
>
> Q. And how is it that an individual who requires a cane to ambulate could perform light [INAUDIBLE] work?
>
> A. Because in these particular positions, they are able to be performed while sitting or standing.

(R. 89).  So, despite the fact that Mr. Farrell could not perform a full range of light work, there were, nevertheless, a significant number of jobs in the regional economy that he *could* perform.

2.

Mr. Farrell next argues that the ALJ's credibility determination was improper because he employed boilerplate language regarding credibility and the RFC that the Seventh Circuit has repeatedly criticized: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." He also argues that the reasons the ALJ gave for disbelieving his allegations were wrong.[3]

Mr. Farrell tosses a number of criticisms at the ALJ's credibility determination, but they are, at best, nit-picking, and the reviewing court must give an ALJ's opinion a commonsensical reading.  *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).  Upon examination, they fall far short of demonstrating that the ALJ's credibility determination was "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Castile*, 617 F.3d at 929;  *Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir.2008).

While the Seventh Circuit has, indeed, criticized the language Mr. Farrell plucks out of the ALJ's opinion, *see* n. 2; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012), it has also said that its use is not a basis for remand so long as the ALJ provides additional

---

[3] Despite the Seventh Circuit's constant barrage of criticism of this formula, *see, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir.2012); *Martinez v. Astrue,* 630 F.3d 693, 694 (7th Cir.2011); *Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir.2010), the ALJs in this district obdurately refuse to follow the Seventh Circuit's instruction, and seemingly delight in using it over and over.

reasons for his credibility determination. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2013); *Richison v. Astrue*, 462 Fed.Appx. 622, 625 (7th Cir. 2012). Mr. Farrell's brief ignores this controlling case law, even as it ticks off the reasons the ALJ provided in the wake of the boilerplate he finds so offensive.[4]

Mr. Farrell complains that the ALJ got it wrong when he pointed out that he had given different information to the consultative examiners about his substance abuse. But Mr. Farrell clearly did just that. He told Dr. Ezike that he did not abuse drugs or alcohol. (R. 422). He told Dr. Hilger that he had. (R. 411). Inconsistencies like this are, of course, a valid basis for discrediting a witness's testimony. *Hamilton v. Colvin*, 2013 WL 1855725, 4 (7th Cir. 2013). Mr. Farrell explains that as of August 9, 2008 – the date of his exam with Dr. Ezike – he had "embarked on the path to sobriety." (*Plaintiff's Memorandum*, at 10). This puts a bit too fine a point on Mr. Farrell's statements to doctors. Mr. Farrell told Dr. Hilger he had used cocaine five weeks earlier (R. 411), yet did not report this Dr. Ezike just 10 days later.

Mr. Farrell showed up at the clinic just two days before his exam with Dr. Ezike, at which time he admitted to substance abuse. (R. 486). He then proceeded to miss 4 of his next 6 scheduled counseling sessions. (R. 480-82, 485). As of August 20th – almost 2

---

[4] The "boilerplate argument" is becoming meaningless boilerplate itself, as disability plaintiff's attorneys regularly pepper their briefs with the formula reflexively included in virtually every ALJ opinion. There is something disturbing about including an argument in a brief that on its face and standing alone has no reasonable basis in law or fact. *See* Fed.R.Civ.P. 11(b); *Fabriko Acquisition Corp. v. Prokos,* 536 F.3d 605, 610 (7th Cir.2008). Yet that is what occurs every time a brief looks to the pointless formulation regarding credibility and the RFC determination while carefully ignoring other aspects of the opinion that make clear the basis upon which the credibility determination actually rests.

weeks after his appointment with Dr. Ezike – he allowed that he had abused drugs and alcohol"in the past couple of months" and that his "addictive behaviors" were still an influence he had to deal with daily. (R. 483). His first negative drug screen was not until August 21ˢᵗ. It did not test for alcohol. (R. 508). Given the record, it was not wrong for the ALJ to call into question Mr. Farrell's statements to the consultative examiners and not find, instead, that he had tempered his statements to Dr. Ezike because he had embarked on the path to sobriety. The statement to Dr. Ezike may not have been an outright lie, but it was misleading at best.

Mr. Farrell next complains that the ALJ should not have mentioned his continuing to work until 2007 as a basis for disbelieving his testimony. It is true, as Mr. Farrell argues, that employment is not proof positive of the ability to work, *see Wilder v. Apfel*, 153 F.3d 799, 801 (7ᵗʰ Cir. 1998), but that doesn't mean that an ALJ is forbidden from considering it along with all the other factors that make up his credibility finding. Moreover, the ALJ here did not employ it as proof of the ability to work. Nowhere in his opinion does the ALJ say that because Mr. Farrell worked despite pain for 10 years he is not disabled. Instead, he was once again taking notice of Mr. Farrell's inconsistent statements.

Mr. Farrell told Dr. Ezike that he had surgery in 1994, and was well until 1997, when he developed back pain again. The ability to work for ten years after that is not proof that he still can work, but undermines the timeline he provided Dr. Ezike. And this work – lifting 100 pounds and carrying 50 – was far more strenuous work than the

limited range of light work – with a sit/stand option – than the ALJ found Mr. Farrell capable of.[5]

Mr. Farrell also contends that the ALJ was wrong to note that there was no evidence in the record to corroborate his statement that his neurologist had advised against surgery for his back. Again, this was yet another example of inconsistency in Mr. Farrell's testimony, and it is difficult to see why the ALJ ought not to have mentioned it along with all his other reasons for not finding Mr. Farrell fully credible. There is, as the ALJ said, nothing in the notes from Mr. Farrell's doctors about surgery. Mr. Farrell's explanation for that is that "the records from the Joliet doctor were never obtained by the ALJ . . . ." (*Plaintiff's Memorandum*, at 11). Mr. Farrell has been represented by counsel since March of 2008 (R. 108-09), well over a year before his administrative hearing. Why Mr. Farrell's attorney did not obtain the records he refers to is left unexplained. Even now, he offers no evidence to support his unadorned assertion in his brief. *See Ebrahime v. Dart*, 899 F.Supp.2d 777, 784 (N.D.Ill. 2012)(statements in an attorney's brief are not evidence)(collecting cases). The ALJ had every right to presume that, because of Mr. Farrell was represented by counsel, he had made his best case for disability benefits. *Mulligan v. Astrue*, 336 Fed.Appx. 571, 578 (7th Cir. 2009).

---

[5] As Mr. Farrell points out, Judge Posner has speculated that a person might be able to hold down a job thanks to a careless or indulgent employer or a superhuman effort. *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003); *Wilder*, 153 F.3d at 801. But, of course, that's not always the case and it likely it rarely the case. And, in any event, Mr. Farrell does not suggest that he was superhuman or the beneficiary of a lax boss during the 10 years he worked for various employers from 1997 on.

Another problem Mr. Farrell has with the ALJ's credibility determination is that the ALJ pointed out that, despite Mr. Farrell's claim that his doctor told him to keep his legs elevated, the opinion Mr. Farrell's attorney solicited from his physician said he did not. Why wouldn't the ALJ mention that? The two doctors are partners and were treating Mr. Farrell in concert. It seems unlikely, as the ALJ suggested, that if Mr. Farrell was required to elevate his legs, the medical opinion from their office would say he was not. Again, it is difficult to see why there was anything wrong with the ALJ pointing this out. It undermined one of Mr. Farrell's statements – yet again.

Also along these lines, Mr. Farrell contends that the ALJ should not have mentioned that the medication side effects Mr. Farrell alleged were not noted by any physician. Quite the contrary, the Seventh Circuit has said that where the evidence from physicians contains no mention of side effects or complaints of side effects, it is entirely proper for the ALJ to employ the inconsistency in his credibility determination. *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010).

Finally, Mr. Farrell says that the ALJ failed to meaningfully consider his obesity. Yet, the ALJ specifically considered Mr. Farrell's obesity and accounted for it in his residual functional capacity determination. (R. 28). The case Mr. Farrell relies upon, *Barrett v. Barnhart*, 355 F.3d 1055 (7th Cir. 2004), does not require more. In fact, *Barrett* involved a case of obesity that was due to a medical condition, and held that the ALJ was wrong to treat it as though it were a self-inflicted condition that was remedial. 355 F.3d at 1068. There is absolutely no evidence here that Mr. Farrell's obesity is the result of a

medical condition.  Mr. Farrell ought to take note of the case he cites, which stated that "if an applicant's obesity is *in fact* remediable, then it is no more a basis for an award of benefits than any other remediable condition would be."   355 F.3d at 1068.  Gluttony is remediable.  355 F.3d at 1068.

Notably, Mr. Farrell does not bother to explain how his obesity aggravates his condition.   Indeed, he does not even claim that it does – he says only that it *could*. (*Plaintiff's Memorandum*, at 12).   But disability benefits are not awarded on the basis of "could."  As such, even if the ALJ had ignored his obesity, any error in doing so would have been harmless.   *See Mueller v. Colvin*, – F.3d –, –, 2013 WL 1701053, 3-4 (7th Cir. 2013)*; Prochaska v. Barnhart,* 454 F.3d 731, 737 (7th Cir.2006); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).

### 3.

That brings us to Mr. Farrell's problems with the ALJ 's treatment of the opinions of Dr. Singla and Dr. Hilger.   An ALJ need not blindly accept a medical opinion, as long as he minimally articulates his reasons for crediting or rejecting it.  *Schreiber v. Colvin*, 2013 WL 1224905, 6 (7th Cir. 2013); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir.2007).   Mr. Farrell contends that the ALJ failed to provide that minimal articulation here.

The ALJ stated that the record did not support Dr. Singla's finding that Mr. Farrell would be absent from work for more than four days every month or that he needed to take breaks every 30 minutes.   An ALJ can validly discredit a treating

physician's opinion when it is inconsistent with other substantial evidence in the record, such as a consulting physician's opinion or the treating doctors own notes. *Hamilton v. Colvin*, 2013 WL 1855725, 5 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Schreiber v. Colvin*, 2013 WL 1224905, 6 (7th Cir. 2013); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir.2007). Mr. Farrell does not contend that Dr. Singla's opinion is not inconsistent with that of Dr. Ezike, the consulting examiner – probably because it is. Instead, he submits that Dr. Singla's opinion is supported by his own treatment notes. (*Plaintiff's Memorandum*, at 13). But the notes Mr. Farrell claims are supportive are nothing more than a catalog of his own complaints. A physician's opinion that is based on nothing more than a claimant's own complaints is not a well-supported opinion. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir.2008).

Certainly, Dr. Singla's actual treatment notes do not provide any support for missing four days every month or constantly changing positions. In the main, his treatment notes indicate that musculoskeletal and neurological examinations were within normal limits. (R. 365-66, 368-73, 376, 379-81, 384-85). Often, Mr. Farrell denied any symptoms. (R. 365-66, 368, 371-74). The doctor noted that Mr. Farrell had no problem with his gait. (R. 364). While there were problems with prolonged standing or lifting (R. 390, 392), there was never any problem noted with sitting. It is simply not the kind of record that suggests a person cannot sit or stand for more than 30 minutes, required

rest every 30 minutes, and would miss four days of work each month. The ALJ was not out of line in discrediting Dr. Singla's restrictions.

Mr. Farrell also argues that the ALJ failed to provide proper rationale for discrediting Dr. Hilger's findings. It's unclear what Mr. Farrell would deem to be proper rationale. The ALJ, once again, pointed to other evidence in the record that contradicted Dr. Hilger's conclusions. (R. 27, 28-29). That's not, as Mr. Farrell characterizes it, relying on a "hunch", but relying on other medical evidence.

### 4.

Finally, Mr. Farrell returns to his contention that because te ALJ found he could not stand or walk for more than two hours, it was improper for the ALJ to have found he could do light work. On that premise, Mr. Farrell argues that the ALJ's hypothetical to the VE was fatally flawed. Mr. Farrell's premise, however, was already rejected earlier. The VE testified that there were jobs that allowed for the very restrictions the ALJ found Mr. Farrell to have.[6] That testimony provides substantial evidence to support the ALJ's conclusion that Mr. Farrell was not disabled.

---

[6] Mr. Farrell submits that the sedentary jobs the VE identified fall outside the restrictions the ALJ found because they required work at a stressful pace or are semi-skilled. But the ALJ followed the prescribed protocol by asking the VE for reference numbers from the DOT; hence, there was no apparent conflict. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)(". . . the ALJ has an "affirmative responsibility" to ask if the VE's testimony conflicts with the DOT, and if there is an "apparent conflict," the ALJ must obtain "a reasonable explanation."); *Weatherbee v. Astrue*, 649 F.3d 565, 370 (7th Cir. 2011)(conflict must be so obvious that ALJ should have picked up on it without any assistance). But, even if there is a conflict involving the sedentary positions, it does not matter because the light work the VE identified accounts for a significant number of jobs in the regional economy. *Weatherbee*, 649 F.3d at 572; *Stanley v. Astrue*, 410 Fed.Appx. 974, 976 (7th Cir. 2011)

Mr. Farrell also contends that the ALJ had to include a number of other restrictions in his hypothetical to the VE, but failed to do so. But an ALJ need only include those restriction that he accepts as credible. *Seamon v. Astrue*, 364 Fed.Appx. 243, 248 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 846 (7th Cir.2007). The ALJ did not accept the additional limitations that Mr. Farrell proposes, and properly did not submit them to the VE.

## CONCLUSION

The plaintiff's motion for summary judgment or remand [Dkt. # 10] is DENIED and the Commissioner's Motion for Summary Judgment [Dkt. #12] is GRANTED.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 11/18/13